UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTURO ROBLES,<br><br>              Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN,[1] Acting Commissioner of Social Security,<br><br>              Defendant. | Case No. CV 08-1376 JC<br><br>MEMORANDUM OPINION |

**I.   SUMMARY**

On March 4, 2008, plaintiff Arturo Robles ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's termination of plaintiff's benefits. The parties have consented to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; Case Management Order March 5, 2008 ¶ 5.

---

[1] Carolyn W. Colvin is substituted as Acting Commissioner of Social Security pursuant to Fed. R. Civ. P. 25(d).

1      Based on the record as a whole and the applicable law, the decision of the
2 Commissioner is AFFIRMED.  The findings of the Administrative Law Judge are
3 supported by substantial evidence and are free from material error.[2]

## II.     BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

Based on plaintiff's applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") filed on May 15, 2000 and December 12, 2004, respectively, plaintiff was found to be disabled beginning on January 17, 2000 due to a medically determinable impairment of depression which met Listing 12.04 ("Affective Disorders").  (Administrative Record ("AR") 76, 107, 492-505, 590, 593).  The most recent favorable medical decision which found plaintiff to be disabled (*i.e.*, "comparison point decision" or "CPD") was dated March 1, 2003.  (AR 76, 593; see AR 492-505).  On December 27, 2005 plaintiff was notified that his benefits were being terminated based on a determination that plaintiff's disability ceased on August 1, 2005.  (AR 83; see AR 60, 73-82).  On January 4, 2006, plaintiff requested a hearing before an Administrative Law Judge.  (AR 86).

A prior Administrative Law Judge ("First ALJ") examined the medical record and heard testimony from plaintiff (who was not represented by counsel) as well as vocational and medical experts on April 6 and August 10, 2006 ("First Hearings").  (AR 621-72).  On January 10, 2007, the First ALJ determined that plaintiff's disability ceased on August 1, 2005 ("First Decision").  (AR 13-19).  The Appeals Council denied plaintiff's application for review of the First Decision.  (AR 4-6).

///

---

[2]The harmless error rule applies to the review of administrative decisions regarding disability.  See Molina v. Astrue, 674 F.3d 1104, 1115-22 (9th Cir. 2012) (discussing contours of application of harmless error standard in social security cases) (citing, *inter alia*, Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006)).

On May 1, 2008, pursuant to the parties' stipulation and for good cause shown, this Court remanded the case pursuant to sentence six of 42 U.S.C. § 405(g) for further administrative action; Significant portions of the recording of the April 6, 2006 hearing were inaudible. (AR 673-75). The Appeals Council, in turn, remanded the case to a second prior Administrative Law Judge ("Second ALJ") to hold a *de novo* hearing and to issue a new decision. (AR 682-83).

The Second ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert on June 12, 2009 ("Second Hearing"). (AR 997-1035). On October 14, 2009, the Second ALJ erroneously determined that plaintiff was not disabled from January 17, 2000 to August 1, 2005 ("Second Decision"), rather than addressing the issue of cessation of disability. (AR 13-19). On April 19, 2010, the Appeals Council granted review, vacated the Second Decision, and remanded the matter for further administrative proceedings with directions to, among other things, obtain testimony from a medical expert. (AR 703-04).

On October 28, 2010, the current Administrative Law Judge ("ALJ") examined the medical record and also heard testimony from plaintiff (who was again represented by counsel), a medical expert and a vocational expert ("Third Hearing"). (AR 1036-72). On January 14, 2011, the ALJ determined that plaintiff's disability "ended as of August 1, 2005" ("Third Decision"). (AR 612-19). On July 1, 2011, the Appeals Council granted review, vacated the Third Decision, and remanded the matter for further administrative proceedings with directions to, among other things, obtain testimony from a medical expert with a specialty in mental health.[3] (AR 719-20).

---

[3]In the Third Decision, the ALJ concluded that plaintiff ceased being disabled on August 1, 2005 primarily because the ALJ found that plaintiff's mental impairment had decreased in medical severity. (AR 590-91). At the Third Hearing, however, the medical expert the ALJ

(continued...)

3

On February 2, 2012, the ALJ held a fourth hearing at which the ALJ heard testimony from plaintiff (who was again represented by counsel), a psychologist/medical expert, and a vocational expert ("Fourth Hearing").  (AR 1073-1103).  On April 3, 2012 the ALJ determined that, at the time of the CPD (*i.e.*, March 1, 2003) plaintiff was disabled due to a listing level mental impairment, but due to medical improvement plaintiff's disability "ended as of August 1, 2005" ("Fourth Decision").  (AR 590-97).  The ALJ noted that "[t]he prior decision issued on January 14, 2011 [(*i.e.*, the Third Decision)] is incorporated by reference and is the decision on remand as supplemented herein." (AR 593).  The ALJ also found that beginning on August 1, 2005 (1) plaintiff suffered from the following medically determinable impairments:  a major depressive disorder, chronic low back pain secondary to mild degenerative disc disease, hypertension, diabetes mellitus, and obesity[4] (AR 593); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 593); (3) the impairments present at the time of the CPD decreased in medical severity to the point where plaintiff retained the residual functional capacity to perform light work (20 C.F.R. §§ 404.1567(b), 416.967(b)) with additional limitations[5] (AR 595); (4) plaintiff could not perform his past

---

[3](...continued)
called was an internist, not a clinical psychologist (as with the First Hearings), who testified only as to plaintiff's "physical conditions . . . not to any psychological [condition]."  (AR 720, 1039).  Accordingly, the Appeals Council remanded the case with an instruction to obtain "testimony from a psychiatrist or psychologist. . . ."  (AR 720).

[4]The ALJ also noted that, as of November 2011, plaintiff developed stage III kidney disease, which the ALJ considered in the residual functional capacity assessment.  (AR 593).

[5]The ALJ determined that plaintiff:  (i) could lift, carry, push or pull no more than 20 pounds occasionally and 10 pounds frequently; (ii) could stand, walk or sit for about six hours out of eight; (iii) could occasionally climb, stoop, kneel, crouch or crawl but never balance; (iv) could not climb ladders, ropes or scaffolds; (v) could only occasionally work above shoulder level bilaterally; (vi) needed an environment that was air-conditioned for temperature control,
(continued...)

relevant work (AR 596); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform, specifically assembler I, inspector/hand packager, and addresser (AR 596-97 ); and (6) plaintiff's allegations regarding his limitations were not fully credible (AR 617).

The Appeals Council declined to assume jurisdiction to review the Fourth Decision. (AR 583-84).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process – Termination of Benefits

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted).

Once a claimant is found disabled under the Social Security Act, a presumption of continuing disability arises. See Bellamy v. Secretary of Health & Human Services, 755 F.2d 1380, 1381 (9th Cir. 1985) (citation omitted). Benefits cannot be terminated unless substantial evidence demonstrates medical improvement in the claimant's impairment such that the claimant becomes able to engage in substantial gainful activity. See 42 U.S.C. § 423(f); 20 C.F.R. §§ 404.1594, 416.994; Murray v. Heckler, 722 F.2d 499, 500 (9th Cir. 1983); Mendoza v. Apfel, 88 F. Supp. 2d 1108, 1113 (C.D. Cal. 2000) (citations omitted).

///
///

---

[5](...continued)
and needed to avoid working around dangerous unguarded moving machinery or at unprotected heights; and (vii) could only do simple and repetitive tasks, in a nonpublic environment, that did not require hypervigilance. (AR 595).

In assessing whether a claimant continues to be disabled, an ALJ is to follow an eight-step sequential evaluation process for DIB claims and a seven-step process for SSI claims:[6]

(1) (DIB cases only) Is the claimant presently engaged in substantial gainful activity? If so, and any applicable trial work period has been completed, the claimant's disability ends. If not, proceed to step two.

(2) Does the claimant have an impairment, or combination of impairments, which meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant's disability continues. If not, proceed to step three.

(3) Has there been medical improvement as shown by a decrease in the medical severity of the impairment(s) present at the time of the CPD?[7] If so, proceed to step four. If not, proceed to step five.

(4) Was any medical improvement related to the ability to work (*i.e.*, has there been an increase in the claimant's residual functional capacity)? If so, proceed to step six. If not, proceed to step five.

(5) Is there an exception to medical improvement? If not, the claimant's disability continues. If an exception from the first

---

[6]Since the sequential evaluation process for DIB and SSI claims are materially the same except as to the first step (which governs DIB claims only and is not relevant in the current case), the Court describes only the DIB process.

[7]"Medical improvement" is defined as "any decrease in the medical severity of [a claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled" (*i.e.*, the CPD). 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(i). "A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [a claimant's] impairment(s)." Id.

        group of exceptions to medical improvement applies (*i.e.*, substantial evidence shows that the claimant has benefitted from "advances in medical or vocational therapy or technology" or "undergone vocational therapy" if either is "related to [the] ability to work"), see 20 C.F.R. §§ 404.1594(d) & 416.994(b)(3), proceed to step six.  If an exception from the second group[8] applies (*i.e.*, disability determination was fraudulently obtained, claimant was uncooperative, unable to be found, or failed to follow prescribed treatment), see 20 C.F.R. §§ 404.1594(e) & 416.994(b)(4), the claimant's disability ends.

(6) Is the claimant's current combination of impairments severe?  If so, proceed to step seven.  If not, the claimant's disability ends.

(7) Does the claimant possess the residual functional capacity to perform claimant's past relevant work?  If so, the claimant's disability ends.  If not, proceed to step eight.

(8) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to do other work?  If so, the claimant's disability ends.  If not, the claimant's disability continues.

20 C.F.R. §§ 404.1594(f), 416.994(b)(5).

    Although the claimant retains the burden to prove disability, the presumption of continuing disability places on the Commissioner the burden to produce evidence of medical improvement to meet or rebut that presumption. Bellamy, 755 F.2d at 1381 (citation omitted); see Allen v. Heckler, 749 F.2d 577,

---

[8]The second group of exceptions may be considered at any point in the sequential evaluation process.  20 C.F.R. §§ 404.1594(b)(5), 416.994(b)(5)(iv).

578-79 (9th Cir. 1984) ("Once the claimant demonstrates that he is unable to return to his prior work, however, the [Commissioner] must find that the claimant is able to engage in other types of 'substantial gainful work which exists in the national economy' in order to terminate benefits.").

### B. Standard of Review

A court may set aside a decision to terminate benefits only if it is not supported by substantial evidence or if it is based on legal error. See 42 U.S.C.A. §§ 405(g), 423(f); Allen, 749 F.2d at 579 (citation omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).

## IV. DISCUSSION

### A. The ALJ Properly Evaluated the Medical Opinion Evidence

#### 1. Pertinent Law

In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided. Courts distinguish among the opinions of three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," namely

those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians"). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.[9]  See id.  In general, the opinion of a treating physician is entitled to greater weight than that of a non-treating physician because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual."  Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

       The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability.  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)).  Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons.  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal quotations omitted).  The ALJ can reject the opinion of a treating physician in favor of another conflicting medical opinion, if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.  Id.  (citation and internal quotations omitted); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and quotations omitted);

---

[9]Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite "magic words" to reject a treating physician opinion – court may draw specific and legitimate inferences from ALJ's opinion). "The ALJ must do more than offer his conclusions." Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988). "He must set forth his own interpretations and explain why they, rather than the [physician's], are correct." Id. "Broad and vague" reasons for rejecting the treating physician's opinion do not suffice. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).

### 2. Analysis

On November 12, 2010, Dr. Rahima Afghan, plaintiff's treating psychiatrist, completed an Evaluation Form for Mental Disorders and a Mental Assessment form in which she, among other things, noted that plaintiff had a long history of mood swings and depression, diagnosed plaintiff with bipolar disorder, and essentially opined that plaintiff's mental condition would prevent plaintiff from working on a full time basis ("Dr. Afghan's Opinions"). (AR 893-99). Plaintiff contends that a remand or reversal is warranted because the ALJ failed properly to consider Dr. Afghan's Opinions. (Plaintiff's Motion at 4-8). The Court disagrees.

First, to the extent plaintiff contends that the ALJ did not address Dr. Afghan's Opinions at all, the record belies such an assertion. In the Third Decision – which the ALJ incorporated into the Fourth Decision by reference – the ALJ discussed Dr. Afghan's Opinions at length and, as noted below, properly rejected such opinions for clear and convincing, specific and legitimate reasons supported by substantial evidence. (AR 593, 615-17).

Second, as the ALJ noted, Dr. Afghan's opinions that plaintiff had marked limitation in multiple categories of mental ability were expressed in "a series of checked boxes without any specific clinical or objective findings to support them." (AR 616) (citing Exhibit 41F at 13-14 [AR 897-98]). The ALJ properly rejected such opinions on this basis alone. See Crane v. Shalala, 76 F.3d 251, 253 (9th Cir.

1996) ("ALJ [] permissibly rejected [psychological evaluation forms] because they were check-off reports that did not contain any explanation of the bases of their conclusions."); see also De Guzman v. Astrue, 343 Fed. Appx. 201, 209 (9th Cir. 2009) (ALJ "is free to reject 'check-off reports that d[o] not contain any explanation of the bases of their conclusions.'") (citing id.); Murray, 722 F.2d at 501 (expressing preference for individualized medical opinions over check-off reports).

Third, as the ALJ and the testifying medical expert noted, Dr. Afghan's Opinions were "inconsistent with [plaintiff's] treatment records." (AR 615-16, 1092-93) (citing Exhibit 41F at 15 [AR 899]). For example, in the Evaluation Form For Mental Disorders, Dr. Afghan noted that plaintiff had a "long history of mood swings and depression, and opined, among other things, that plaintiff was unable to adapt to work or work-like situations, that plaintiff likely would be absent from work "more than four days per month" due to his impairments or treatment, and that even a minimal increase in mental demands or changes in the environment would likely cause plaintiff to decompensate. (AR 893, 896). As the ALJ observed, however, Dr. Afghan's assessment of plaintiff's mental functional capacity was "quite inconsistent" with such dramatic mental limitations. (AR 615). Specifically, Dr. Afghan noted that plaintiff (1) did not require assistance to keep his appointments; (2) presented with a normal posture, gait, mannerisms and general appearance; (3) had no history of psychiatric hospitalization; (4) had no history of alcohol or drug abuse; (5) had some difficulty concentrating and was unable to do serial 7s, but otherwise was oriented in all spheres; (6) had intact memory with no hallucinations or delusions; and (7) was stable on medication. (AR 893-94).

Similarly, as the ALJ also noted, in what appears to be the last page of the Mental Assessment form, Dr. Afghan opined that plaintiff was unable to maintain a sustained level of concentration, unable to maintain sustained repetitive tasks for

11

an extended period, unable to adapt to new or stressful situations, and unable to complete a 40 hour week without decompensating. (AR 899). In contrast, on the same page Dr. Afghan indicated that plaintiff had clearly organized thoughts, intact memory and judgment, no psychosis, no evidence of confusion, insomnia, depression, anxiety, panic attacks, decreased energy, inappropriate affect, suicidal/homicidal ideation or manic syndromes, and no negative symptoms of social withdrawal, apathy, poor grooming or affective flattening. (AR 899). The foregoing discrepancies were clear and convincing reasons based on substantial evidence for rejecting Dr. Afghan's Opinions. See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (A discrepancy between a physician's notes and recorded observations and opinions and the physician's assessment of limitations is a clear and convincing reason for rejecting the opinion.).

Fourth, the ALJ properly rejected Dr. Afghan's Opinions to the extent they were not supported by the treating psychiatrist's own notes or the record as a whole. See Bayliss, 427 F.3d at 1217 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.") (citation and internal quotation marks omitted); Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (treating physician's opinion properly rejected where treating physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]"). For example, as the medical expert testified (AR 1093), although Dr. Afghan's treatment records reflect sporadic reports by plaintiff of subjective complaints (AR 852 ["stressed"]; AR 853, 856, 901, 904-07, 909 ["depressed"]; AR 848, 861, 913 ["angry/irritable']), most records document primarily normal mental status evaluations (AR 844-47, 849-51, 855, 857-60, 862-64, 903, 908, 910-12), many noted that plaintiff was "stable" on his medication (AR 846, 847, 855, 857-58, 864-65, 902, 908, 910), and several others reflect that plaintiff told Dr. Afghan that his condition was even improving (AR 849, 862, 903 ["feeling

better"]; AR 855, 857, 860, 864-65, 908, 912 ["doing fine," "no problem," "doing OK"]).

 Fifth, the ALJ properly rejected Dr. Afghan's Opinions as inconsistent with plaintiff's own statements regarding his functional capabilities. See Morgan, 169 F.3d at 601-02 (ALJ may reject medical opinion that is inconsistent with other evidence of record including claimant's statements regarding daily activities).  For example, as the ALJ noted, plaintiff's ability to attend college and earn a degree in business management after he was initially found disabled is inconsistent with the severe limitations found by Dr. Afghan.  (AR 617) (citing Exhibit 41F at 9-15 [AR 893-99]).

 Finally, the ALJ properly rejected Dr. Afghan's Opinions in favor of the conflicting opinions of the consultative examining neurologist/psychiatrist, Dr. John S. Woodward (who concluded that plaintiff could perform "simple, repetitive tasks") (AR 526), and the medical expert, Dr. David Glassmire (a clinical psychologist who testified that plaintiff could perform "simple repetitive tasks [with] no interaction with the public and no tasks requiring hypervigilance") (AR 1076, 1094).  The opinion of Dr. Woodward was supported by the psychiatrist's independent examination of plaintiff (AR 524-27), and thus, without more, constituted substantial evidence upon which the ALJ could properly rely to reject the treating psychiatrist's opinions.  See, e.g., Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (consultative examiner's opinion on its own constituted substantial evidence, because it rested on independent examination of claimant); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  Dr. Glassmire's testimony also constituted substantial evidence supporting the ALJ's decision since it was supported by the other medical evidence in the record as well as Dr. Woodward's opinion and underlying independent examination.  See Morgan, 169 F.3d at 600 (testifying medical expert opinions may serve as

///

substantial evidence when "they are supported by other evidence in the record and are consistent with it").

Accordingly, a remand or reversal is not warranted on this basis.

### B. The ALJ Properly Evaluated Plaintiff's Credibility

#### 1. Pertinent Law

Questions of credibility and resolutions of conflicts in the testimony are functions solely of the Commissioner. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006). If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment. Orn, 495 F.3d at 635 (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). If the record establishes the existence of a medically determinable impairment that could reasonably give rise to symptoms assertedly suffered by a claimant, an ALJ must make a finding as to the credibility of the claimant's statements about the symptoms and their functional effect. Robbins, 466 F.3d at 883 (citations omitted). Where the record includes objective medical evidence that the claimant suffers from an impairment that could reasonably produce the symptoms of which the claimant complains, an adverse credibility finding must be based on clear and convincing reasons. Carmickle v. Commissioner, Social Security Administration, 533 F.3d 1155, 1160 (9th Cir. 2008) (citations omitted). The only time this standard does not apply is when there is affirmative evidence of malingering. Id. The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).

///

To find the claimant not credible, an ALJ must rely either on reasons unrelated to the subjective testimony (*e.g.*, reputation for dishonesty), internal contradictions in the testimony, or conflicts between the claimant's testimony and the claimant's conduct (*e.g.*, daily activities, work record, unexplained or inadequately explained failure to seek treatment or to follow prescribed course of treatment). Orn, 495 F.3d at 636; Robbins, 466 F.3d at 883; Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005); Social Security Ruling 96-7p.[10] Although an ALJ may not disregard such claimant's testimony solely because it is not substantiated affirmatively by objective medical evidence, the lack of medical evidence is a factor that the ALJ may consider in his credibility assessment. Burch, 400 F.3d at 681.

### 2. Analysis

Plaintiff contends that the ALJ inadequately evaluated the credibility of his subjective complaints. (Plaintiff's Motion at 9-10). The Court disagrees.

First, the record belies plaintiff's assertion that the ALJ "simply did not bother evaluating [his] testimony." (Plaintiff's Motion at 10). In the Third Decision – which, as noted above, the ALJ incorporated into the Fourth Decision by reference – the ALJ discussed plaintiff's subjective complaints in detail and, as noted below, found plaintiff "not . . . fully credible" for clear and convincing reasons. (AR 593, 616-17).

Second, the ALJ properly discounted the credibility of plaintiff's subjective complaints as inconsistent with plaintiff's daily activities and other conduct. See Thomas, 278 F.3d at 958-59 (inconsistency between claimant's testimony and claimant's conduct supported rejection of the claimant's credibility); Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistencies between claimant's

---

[10]Social Security rulings are binding on the Administration. See 20 C.F.R. § 402.35(b)(1); Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990) (citations omitted).

testimony and actions cited as a clear and convincing reason for rejecting the claimant's testimony). For example, as the ALJ noted, contrary to plaintiff's allegations of disabling mental limitations, plaintiff testified that he was able to attend college and obtain a BS degree in business management. (AR 617, 1083-86). As the ALJ also noted, plaintiff's allegations of disabling physical impairments were inconsistent with plaintiff's assertions in a Function Report dated May 5, 2005 (*i.e.*, three months before plaintiff's benefits were terminated) – specifically, plaintiff stated that he had no problems with personal care, he could prepare some meals, could do some household chores with the help of his children, could drive a car, ride in a car, go out alone, shop in stores or by computer (*i.e.*, for household items, car parts, and groceries with his spouse), and he would go to school "every day" and regularly attend church. (AR 617) (citing Exhibit 23E [AR 240-47]).

Finally, the ALJ properly discounted plaintiff's credibility to the extent plaintiff's subjective symptom allegations were not fully corroborated by the objective medical evidence. See Rollins, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") (citation omitted). For example, as the ALJ noted, medical records reflect primarily normal mental status evaluations for plaintiff and that plaintiff was mostly stable with medication. (AR 617, 844-47, 849-51, 855, 857-60, 862-65, 902-03, 908, 910-12); cf. Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (evidence that claimant "responded favorably to conservative treatment" undermines plaintiff's reports of disabling pain). In addition, Dr. Jeff Altman, a state-agency examining physician, conducted a complete orthopedic consultation which included a physical examination of plaintiff. (AR 573-77). Contrary to plaintiff's complaints of chronic back pain, Dr. Altman found "some myofascial pain" and "mild

degenerative changes" in plaintiff's back, but otherwise plaintiff had "no [] gross functional deficits." (AR 616) (citing Exhibit 34F at 4 [AR 576]). More specifically, plaintiff's range of motion in the thoracolumbar spine was within normal limits, straight leg raising was negative in both the seated and supine positions bilaterally, gait was normal, motor strength was 5/5 in both the upper and lower extremities, sensation was intact, and reflexes were normal. (AR 574-76). In fact, as the ALJ noted, Dr. Altman opined that plaintiff was capable of performing heavy work. (AR 616) (citing Exhibit 34F at 4 [AR 576]).

Accordingly, a remand or reversal is not warranted on this basis.

## V. CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: September 30, 2013

                                                         /s/
                              Honorable Jacqueline Chooljian
                              UNITED STATES MAGISTRATE JUDGE